Okay, our next case for argument is 21-2125, In Re Apps. Mr. Murphy, please proceed. Thank you, and may it please the Court, there are two main issues with the Board's decision. The first relates to the claims that recite full bottle capture. With respect to those claims, the Board has not addressed the evidence and arguments of record that the combination would remove full bottle capture from the MIRS reference. With respect to the claims that recite offset handles, the Board has taken prior art statements far out of context. In both instances, there is no motivation because the Board's factual findings are not supported by substantial evidence. If I could jump right into the full bottle capture issue, and by full bottle capture, we're referring to ribs that fully enclose bottle caps when a crate is crossed at. And in your analysis, Justin, I don't want to cut you off, but if you could include a question I had about that, which is, if you could explain to me why pushing a handle out would destroy a crate's ability to achieve full bottle capture, which is the argument you make in blue, 48-49. If you could include that in what you're about to say, I'd appreciate it. Yes, so I can lead with answering your question. What happens is these bottle crates are all arranged on pallets. The pallets are stacked high, and they're— Counsel, put down the pad of paper. You're waving it in front of your face, so we really can't even fully see you. My apologies. That's okay. So these crates are arranged on pallets, and they're stacked such that one layer of bottle crates is arranged in one orientation, and then the next highest layer is arranged in another orientation. That's called cross-stacking. Cross-stacking increases the stability of a stack of crates versus a situation where the crates are just stacked without cross-stacking them. If you can achieve full bottle capture, you get even more stability, and that's what the inventors have done here. When you increase the width, to your Honor's question, when you increase the width of a bottle crate, it throws off the orientation of those layers of stacks such that the bottle caps will hit in different spots on the bottom of the crates, and that's what Mr. Apps points out in his affidavit. Frankly, that's been admitted by appellants since the filing date of our application. Paragraph 3 of our application says when you change the width, you can't achieve full bottle capture, and so that is a marked improvement over the prior art. The board, in addressing our full bottle capture arguments, they conflate cross-stacking and full bottle capture. The board says the evidence before us shows that the prior art can cross-stack. We agree the prior art can cross-stack, but we argued in submitted evidence that it cannot cross-stack while achieving full bottle capture when you have a third central row of bottles, such as in the stall reference that the board relies on. Yeah, one sort of sub-point to this also is I think the other side says, I think I'm right, that none of the claims, at least claims 1, 15, and 25, actually require full bottle capture, right? So those claims, and if I could point you to our opening brief at page 24, all of the claims, I'll give you a moment. Got it. So there's a picture of the stall reference, and if you look at that reference, there are ribs at a lot of different locations on the bottom of that crate, but there are no ribs at the perimeter. That's because the stall cannot put ribs at that location. That's supported by the apps affidavit. If there were ribs in that location, it would be unstable. It wouldn't be able to cross-stack. And all of the claims that we're arguing under the heading full bottle capture, they recite perimeter ribs. So those are the hard parts. That's the hardest part to achieve of full bottle capture. It's easy to put ribs where stalled at, you know, just at these random locations on the interior of the base, but it's difficult to place them at the perimeter because of what I said before. So the board and the director, I believe, they seem to kind of acknowledge that some change in dimension is shown in the prior art. You would have to change the dimensions of the crate when you add the third row because you have a centered handle. So what the board does is they make this passing reference to Kessler. They say, well, offset handles were known, period. And they don't explain how they're modifying mirrors installed in view of Kessler in this regard. And Kessler says nothing about full bottle capture. It says nothing about cross-stacking. And another point that the director makes is the director says, well, you don't need to offset the handles. You could just leave them where they were. And then the crate would have the same dimension, and it could still cross-stack and achieve full bottle capture. That's not a position the board took, and there's no evidence that a crate that intentionally crowds the user's fingers, because if you don't move the handle, you're going to intentionally crowd the user's fingers, that that would be operable or a viable solution. The director also engages in some burden shifting. They say, well, appellants haven't pointed out how additional modifications wouldn't somehow save what the board has done. And that's not our burden. The board has the burden to point out the additional modifications. Any modifications the board is making, they have to point that out. If I could turn to the offset handles. So just on that last point, could you just give us the site to where the board said, in your view, or improperly shifted the burden, just so I'll have it for my records? I don't have that pin site. I can get it for you if I do have rebuttal time. Okay. Thank you. Yeah. So on the offset handles issue, Kessler does not stand for the proposition that you would offset handles to make two-handed carrying more convenient. Both the examiner and the board and the director think that Kessler teaches that it is a reason to offset handles, to make two-handed carrying more convenient. Offsetting handles does not make two-handed carrying more convenient. There are other tangential benefits to offsetting the handle, which appellants have acknowledged and conceived of through their invention. But offsetting the handles is not a reason that Kessler – excuse me. Accommodating two-handed carrying is not a reason to offset handles. Kessler – it spends paragraphs and paragraphs explaining why it actually offsets its handles. It offsets the handles to accommodate one-handed carrying. Kessler is a paper case. The appellant's invention and the mirror's and saw references are all plastic crates. But Kessler does say – I mean, there's a site in Kessler, right, that explicitly, quote, it will be understood that the location of the two hand holes allow the carton to be carried conveniently with both hands if desired. That's right. So that statement is only after you've decided to offset the handles. Kessler then says, well, if you're going to offset the handles, you should do it in opposite directions. But the reason – That's not – that statement doesn't provide a motivation to have offset handles so you could carry it with both hands? I believe that statement, read in context, is saying for balancing purposes, if you're going to offset the handles to accommodate one-handed carrying to get more strength in the corner and to avoid leg contact, when you offset those handles, you want to do it in opposite directions as opposed to the same direction. If you offset them in the same direction, then you get an unbalanced crate. And there are cases on point that say, you know, when the prior art is not concerned with the problems that the base reference is facing, there's no motivation to combine those things. And it – mirrors, for example, is not concerned with one-handed carrying. If someone carried the mirrors crate with one hand, all of the bottles would spill out. Mirrors is not concerned with its handle ripping. Mirrors is not concerned with contact with its leg when its case is held off to the side with one hand. What are the cases – I guess everything depends on the context, so I guess I'm not clear. I mean, there are a lot of words here about if the prior art is not concerned with the same problem. So what – just to give me clarification, what cases are you talking about? So I'm talking about the Kemmers case, and there's also the Knopf case. I don't know if it's a soft pay or a hard pay in Knopf. And also I think perhaps the most relevant case on point is Kotzeb. In that case, the board said – excuse me, this court said the board was taking statements out of context. And the board improperly casts the invention at issue as a technologically simple one. In fact, the board in their decision leads off their decision saying the technology here is simple in our case. And we think that the board is doing just what the board did in Kotzeb and taking statements that in the abstract appear to support the rejection. But in reality, in context, they don't. Counsel, you're into your rebuttal time. Would you like to save the remainder? Yes. Okay. Ms. Queller. Ms. Christie. Your Honors, and may it please the court. The board's determination that the claimed beverage crates are obvious over the various combinations of Mears, Stahl, and Kessler is supported by substantial evidence. Starting with where counsel left off with the offset handle limitations of Claims 8, 18, and 25, it would have been obvious as the board found to offset the handles of Mears' beverage crate because Kessler teaches a beverage crate with offset handles was known and is a convenient way for two-handed carrying. This is a standard case of obviousness where a known claim element, the handle location, is used according to its known function with predictable results in an articulated and art-supported reasoning, which is the convenience. There's been discussion of basically what I would call a competing interpretation of Kessler. However, even if opposing counsel's interpretation of Kessler is correct, that it's directed only to one-handed carrying, this convenience statement, the board's reasoning is still supported by substantial evidence, which is Kessler's statement itself, which is Appendix 538 and 539, specifically tie convenience to two-handed carrying. I'll address, unless Your Honors have any additional questions, the mention of the COTSAB case the counsel ended on. There is extremely different than the case and scenario here. In COTSAB, there was a prior art system and a claimed censor, and this court found that the board failed to equate why the system in the prior art equated to the censor in the claim. There is no such confusion here. We have a handle for beverage crates in Kessler that equates directly to a handle for a beverage crate in Mears. You're just substituting one known element for another. Unless Your Honors have any other questions, I'll move on to the odd number of bottle capture areas. As with the previous rejection, here it's also obvious to adjust Mears beverage crate from a 2x4 configuration to a 3x5 configuration, just a predictable variation of a crate size to accommodate a larger or different number of sized bottles. Changing from even to odd was within the skill of the art. It's nothing more than an obvious design choice. We have explained in depth why we believe in our briefing that claims 1, 15, and 25 do not include that claim limitation. I'm happy to further elaborate. Well, his response to my question about that was to point to page 24 of the blue brief, which talks about the perimeter stuff, and that that's really what granularly we were talking about, and that he thought responsive to what I was asking. So why don't you respond to that as well? Certainly, Your Honor. So with respect to the perimeter, what the specification says is that it ties full bottle capture directly to the bottle capture areas being fully circumscribed by the ribs. We point that out in our brief, but it's at appendix 49, paragraph 32, and also in their own brief at page 21. They relate full bottle capture to something where it's fully circumscribed. However, the claims, if you look at them, only require that the bottle capture areas are partially circumscribed. Therefore, the spec, which ties full circumscribed to full bottle capture, is not reflected in the claims. And that is why our position is that claims 1 and 25 do not recite this claim limitation. I'd also like to point out that claim 1, there's a lot of emphasis on cross-stacking. Claim 1 also does not require cross-stacking either. But claim 16 does require full bottle capture, right? That is correct, Your Honor. And as the board found, I'll address the merits first. The board found that the modification, and the examiner found that the modification of just changing mirrors from 2x4 to 3x5 had the full bottle capture. It still had these ribs fully circumscribed around the bottle capture areas. And that's appendix 408 and 492, where the examiner addresses it. And then the board says, essentially, mirrors discloses everything but an odd number. Which then points to the examiner's analysis. So, mirrors discloses full bottle capture. All the arguments on destroying full bottle capture are based on an additional modification that Mr. Apps asserts you would have to make. There's nothing to say that the mirrors... Putting the handles up. Correct, Your Honor. So, as the board found... But you wouldn't have that problem if you did the offset handles. Or, as the board stated at appendix 8, you could move the handles someplace else. Not offset. I don't know how many other locations there are other than offset or center. Showing why that's sort of an obvious change. But the board said you could move it to other areas over different end columns. Depending on your modification. But also that you can offset that. And that's consistent with the way an ordinary skilled artisan is presumed to know and be able to make such modifications in the art. In addition, pointing out again, the fact that the only way to preserve full bottle capture with an odd number is to make this change is not persuasive. Because Claim 1 and Claim 16 don't require offset handles. So, if you need offset handles in order to retain full bottle capture, Claim 1 and Claim 16 don't require you to have offset handles. Unless Your Honors have any other questions, we just ask you to affirm the board's decision on both sets of claims as supported by substantial evidence. Thank you, counsel. Mr. Murphy, you have some rebuttal time. Please proceed. All set, thanks. To answer one of Your Honors' questions regarding where we are alleging that burden shifting is occurring, I would direct you to the government's brief at the top of page 23, where they reference additional modifications. They're alleging we didn't show that additional modifications so it couldn't somehow save the combination. I also want to just generally address, even though some of the claims don't recite certain features and some claims recite certain other features, the board still has to address the arguments that the modification, there's evidence in the record and no rebuttal evidence, that the modification would remove a feature from the mirror's reference itself. And I'll point the board to the Merck case that's cited in the briefs. In that case, the board did not adequately grapple with the evidence and arguments in the record that showed there would be the removal of a feature. The argument, I believe, takes on even greater importance when it is claimed, but even with respect to Claim 1, the board still has to address what would happen to mirrors. I don't have anything further unless Your Honors have any questions. Okay, we thank both counsel. This case is taken under submission.